Shell Oil Company I want to work a little bit with your question, with your answer a moment ago, that it was a specific causation question. If the evidence does in fact support that the plaintiff has this chromosomal change, and if the evidence also supports it, the primary way, preponderance of the evidence, the only way that you can get that chromosomal change is from exposure to benzene, and that chromosomal change is what causes MDS, which then leads to AML, and the plaintiff had AML. That's a causation level of proof, and it in fact may, I'm not saying that it does, it may well show that this plaintiff got AML from exposure to benzene, and the only real explanation of how he was exposed to benzene was through his gasoline station work. That can't fit into a general causation analysis, and you have to have cohort studies and all sorts of other things specifically dealing with gasoline, or does in fact this evidence that I just talked about, and you can say the evidence isn't there if you like, just supports how you get from those studies dealing with other forms of benzene to saying that this gasoline exposure is what causes AML in humans. No, Your Honor, I don't believe it does, because... Well, first you accept that the evidence is there through the chromosome steps that we're talking about. I accept that there was evidence that Mr. Burse had the chromosomal deletions of 5 and 7. I don't think the evidence shows that he had MDS. But if he had AML, isn't MDS going to have occurred before that? Isn't the evidence, just whether he was diagnosed or not, just means he wasn't going to the doctor at the right time or didn't go to the right doctor, but if he had AML, doesn't MDS come before that? I'm not asking you as a doctor. I'm asking you as a knowledgeable person of this record. Yes, no, I don't think that the experts were in agreement on that based on current studies. But there's some evidence to support that, is there not, looking at this stage in the case we are? Well, I think that the evidence here is that he had AML with myelodysplasia-related changes, and that is, in fact, what Burse's expert, Infante, relied on. He relied on that diagnosis, not a diagnosis of any MDS. And so then the medical records are not in the record to show that. But I think, importantly, back to the chromosomal deletions, the only studies they rely on is to show that these deletions show benzene-induced AML, and there have actually been studies about whether gasoline exposure causes these chromosomal deletions, and those have found that they don't, and that's the NARAD 1992 study. So, again, this comes back to the scientific community is in agreement that despite all the literature and studies of pure benzene, there is a specific need to study gasoline and its effects on AML and on other diseases. And when they do, they have consistently found no significantly increased risk of AML. What about Talbot, which is the study of the contamination? It's a fairly recent study. You're talking about the gasoline spill? Yes. Talbot, I think, is not supportive because they conclude these results suggest a possible association between chronic low-level benzene exposure and increased risk of leukemia among residents of the spill site. And the U.S. Supreme Court said in Joyner that studies don't support an expert's opinion when the authors of the study are not willing to actually opine that there's a causal connection. Here we've got only a possible association, which this court in Allen, in which the reference manual says, is not the same thing as a causal connection. Well, it seems to me... I mean, Judge Vance had a very thorough order. And you go through it, and she painstakingly addresses each study that Infante relied upon, each gasoline study, and finds reasons not to rely on that study, why that study alone won't support the necessary causal link. But if you look at everything in total... I mean, for one thing, everyone agrees benzene in pure form and in high concentrations does cause AML. Then we have studies showing... I think there's some statistically significant studies showing that gasoline-containing benzene can cause leukemia, but, well, the answer is it might not be focused on AML. Then we have studies showing that gasoline workers have increased risk of AML. But, oh, well, there's a lot of substances other than just pure gasoline that are exposed to exhaust and oils and other things. But if you look at all that together, why can't a qualified person like Infante extrapolate from all those different points that in and of themselves might not be sufficient and extrapolate from all that that there is more likely than not that benzene, as a matter of general causation, there's also specific causation, but that benzene and gasoline does have a link to AML? Because, Your Honor, I think he made no attempt to do that. As Judge Vance notes in her order, he laid out all these studies and talked about them and sometimes manipulated the data from them to reach different conclusions. But he never made that connection for the judge. He just left a gap in his analysis between how he could reconcile his opinions with all these studies to the contrary and then all the specific deficiencies she found in these studies, at least to the extent that they could support his opinion. The plaintiffs have generally not challenged a lot of those findings, and this Court applies a clear error standard to those findings under the Knight v. Kirby and Lemarine. So I think in that situation, she did do her duty under Daubert, which was to look at the body of evidence upon which the expert relied and determine whether it was sufficient, under good science, to support his opinion or whether there was just simply too great an analytical gap. And I'd like to discuss some of the studies that they do rely on, since Your Honor has brought that up. Before I do that, I would like to say that I don't think that... And Vante did... He made no effort to bridge the gap. I don't think he could have done it if he had tried because of the fact that the scientific community is in agreement that you need to specifically study benzene. And because of this Court's case law, that you need to study the substance at issue. But there was also evidence in the record, and Vante assumed that gasoline has 2% benzene. And plaintiff's own expert, Miller, before he was excluded, conceded that for Mr Burse in this situation to have obtained sufficient exposure to benzene through gasoline, he would have had to have been exposed to an immediately lethal amount of gasoline. And so I think it makes it impossible for them to bridge the gap on the current state of the science. And that's the Castello opinion that we cite in our brief. The Court found that the expert did something very similar there. He caught a mistake where he realized that his calculations would have required the expert to... I mean, would have required the plaintiff to have been subjected to a lethal amount of gasoline, and the Court said that underscores the unreliability of the expert's opinion. During the relevant time period, which I know was many decades ago, what was the benzene level in your client's gasoline? I think, I might have misunderstood, but I think opposing counsel in response to one of my questions said 5%, which I thought was higher than what's believed to be the... Yeah, I think there was... There's no, as I recall, there's no direct evidence of exactly how much benzene was in the gasoline back then because we just don't have those records. I think there was some testimony generally in that period of time. It could be 4% to 5%. But, again, Mr Infante based his analysis on a 2%, and I think that's what should govern our discussion here today. Now, the plaintiff does now rely on some gasoline studies, but Judge Vance found that none of them provided a scientifically valid support for Infante's opinion, and I think she found that each of them fell into one or more of categories of basically non-fits between the studies and the expert's opinion. And the first one was these studies that suggest merely a possible association or the possibility of a causal relationship. And I think that's even true of the Jacobson opinion that they... Excuse me, study that they rely on now. It did find an increased risk of AML, but, as Your Honours noted, it has been criticised. But more importantly, even then, the authors of the study concluded that it appears possible that benzene exposure may contribute to this risk of AML for gas station attendance, and they suggested that further studies on the exposure-response relationship were needed. The Talbot 2011, I think I already mentioned, finds only a possible association, and the Rushton 2014 said they found some increased risk that suggested a relationship between AML and benzene, but they said the overall evidence does not persuasively demonstrate a risk between benzene and AML, and that's simply not sufficient under the tort law standard of causation to support his opinion. There's also a category of studies that don't find statistically significant results, but, as Your Honours noted, Infante manipulated the data after the fact to achieve these statistically significant results, and as the judge explains in her opinion, that's the Wong 93, the Sorhan 2002, the Rushton and Romunek 97, and the Spivey 83. He gave no explanation of why it's good science, other than his mere assurance, why it would be good of science to make adjustments to this data that the authors, in some cases, definitively chose not to make. In the Wong study, they thought about the healthy worker effect and decided not to make that adjustment. Dr. Infante made it without any explanation why that was good science, and he made it to reach conclusions that were contrary to the conclusions of the authors of the study. And this court and the US Supreme Court have held that a district court doesn't abuse its discretion in rejecting an expert's reliance on studies that don't contain statistically significant results, and in Brock v. Merrill Dow, this court, as one of the many reasons for rejecting an expert's opinion, was that one of the studies was actually a reanalysis of another author's studies that wasn't peer-reviewed or published. The third category of reasons, studies that don't fit his opinion, is, in spite of plaintiff's claims, the plaintiff says some of these are gasoline studies, some of them just aren't gasoline studies. The Schnatter 2012, Rushton 2014, and Terry 2005, it was gas station attendance, but they didn't separate out the exposure to gasoline. And, in fact, Terry concluded, quote, given the likelihood of multiple exposures, it is possible that compounds other than benzene contributed to an increased risk of AML. How would they separate out the different substances by trying to figure out the different exposure levels and then seeing the association with the workers who got the cancer? Because there's a little bit of a... You know, some studies you attack because, well, it wasn't gasoline station workers. Then they have the gasoline station worker studies. Well, but the problem then is there's also exhaust and oil. I mean, it's almost like they can't ever win. What kind of study would be able to prove this link? Well, I think the... I mean, I... One, I don't think that is necessarily the question today, given the standard of review where we review Judge Vance's findings as to the deficiency of these studies under a clear error standard. But I think if they even had... I mean, they don't even have a study showing both a statistically significant increase in the use of gasoline and AML where the authors were willing to conclude that that was indicative of a causal relationship other than a mere possibility. And so I think on this record, they can't show that she manifestly erred. I don't think this court has to decide what in the future would be sufficient or would have to decide in general what should be sufficient because it's part of the differential standard of review that we're under. There are studies also that don't examine the risk of AML, that only examine the risk of leukemias generally or specific kinds of leukemia other than AML. That's also the Rushton and Romunak 97 and Spivey 83 studies and the Terry 2005 studies. And this court said in Allen v. Pennsylvania Engineering Company that studies that examine cancers different than the cancer to which the plaintiff had are not probative or not supportive of an expert's opinion. And I think that makes eminent sense in this case because the evidence was that AML has its own etiology distinct from other types of cancers. But once again, the judge was left without any explanation by Infante to help her bridge the gap between those studies and AML. He just made no effort to do that. And she did not abuse her discretion in that situation in finding it insufficient. I think even if this court were to find, and I don't think they should, but even if you could say that maybe one or two of these studies plausibly supported Infante's opinion, under this court's opinion at night, that would not be sufficient to show that Judge Vance manifestly erred or abused her discretion. She could still exercise her discretion to find that the body of the evidence, which is what Daubert requires her to look at, that the body of the evidence did not provide sufficient scientific support for his opinion. In sum, I think that she did exactly what Daubert night in Rule 702 asked her to do. She carefully analyzed the studies that he relied on to determine if the body of the evidence was sufficient to support his general causation opinion. And under the deference that the Supreme Court has set as the hallmark of abusive discretion review, the plaintiffs cannot show that she manifestly erred, even if they disagree with her ultimate conclusion. Judge, if I have a couple of minutes, I wanted to respond to a couple of questions that you asked the plaintiff that we didn't discuss. Judge Costa, you asked, what case in the United States has allowed an expert to testify on gasoline and AML? The plaintiffs have signed it, and we have found no cases applying Daubert that allowed an expert to go to the jury in these situations. Warren was not a Daubert case, did not even cite Daubert, and it was really a legal sufficiency case, and it also involved exposure to pure benzene, not just gasoline. And Judge Southwick, on Curtis, Curtis, I think one of the... I think this court said in Johnson that Curtis... the defendant didn't seriously challenge general causation, and so that's why I think it spent most of its time on specific causation, but even as to general, they had something that we don't have in this case. They had air monitoring results that showed that these people exposed to highly aromatic distillate, that they were exposed to 100 times the legal limit of benzene. So that's a very different case from ours. They had actual monitoring results, and so... What about this Wagner case, I believe was the name of it, from the Eastern District of Louisiana that counsel mentioned? The Wagner case? I don't recall the facts offhand, but I know that if they cited it in their brief, it wasn't one that actually says under Daubert, and Warren was a Louisiana... It's an Eastern District of Louisiana federal case, yeah. I'd be happy to look at it, but I know we looked at all the cases in their briefs, and none of them, applying Daubert, allowed this kind of testimony to go to the jury. All right, counsel. Thank you, Your Honor. Your Honors, I want to point out that OSHA, the EPA, the National Toxological Program, the ATSDR, Toxological Profile Benzene, as well as IARC and NIOSH all comment that benzene is a significant source from pumping gasoline. Gasoline is in OSHA standard, regulated in OSHA benzene standard. Matter of fact, the EPA recently reduced the legal benzene content today, in 2007, to reduce the risk of leukemia to children, EPA, 2007. Let me ask you, even if you can convince us that Judge Vance could have allowed Infante to testify, you've got a much higher hurdle here, which is to show us that she abused her discretion in not letting him testify. So what, in your final few minutes, what couple of arguments show that she reached that standard of manifest or clear error? One, in her order, she says benzene causes AML, and the defendants admit benzene causes AML. Then she takes and she goes one by one against most of the gasoline studies. And erroneously, for instance, in Terry, she criticizes, I'm sorry, Schwartz. She criticizes in Schwartz all these other products, but didn't read the conclusion where the author said, consistent with the exposure to benzene and gasoline. She either ignored or missed those conclusions where the authors, she used a word earlier that said suggest, and in Joyner they say suggest. The authors don't have to give a definitive conclusion. You don't even see those in mesothelioma studies all the time. It's the increased risk which is the conclusion itself. The authors state there's an increased risk. Quite often you never see the word cause. Importantly, you asked about Curtis earlier, in Shell's 1990 gasoline MSDS sheet and Texaco's 1997 MSDS sheet for gasoline, they say benzene causes AML, and they list benzene as a constituent. And Curtis, the court weighed heavily on that in the ATSDR profile as the general causation evidence. The judge was completely silent about these MSDS sheets, didn't talk about that, as well as other documents. Shell's corporate safe handling of benzene and benzene-containing products set in 1980. Benzene and benzene in gasoline causes leukemia, disseminated to every subsidiary of Shell. You didn't hear about that in the order. Shell's benzene and gasoline, 1992. Gasoline itself may be considered a carcinogen, biggest source of gasoline at service stations. You didn't hear about that in the opinion. We heard an awful lot in the opinion, and you can cherry pick some unfair word. I don't mean it that way. But you can find things that she could have mentioned that didn't. But the overall thrust of her opinion, sort of using terminology that Judge Costa did earlier, looking at her opinion as a whole, she did extraordinary work, which you wish she hadn't done probably, but extraordinary work in going through all of this. Where is the big defect? Maybe she didn't mention some things she should have. What is the—if there's one thing you want us to take home, and you've got about a minute and a half to make sure that we take it home, what is it we should be thinking about that shows us she erred? I would say two things in particular. On the stand, Dr. Nadelson, when questioned, I asked him, can benzene and gasoline cause AML? Yes, at 40 parts per million years. He gave a dose. But he admitted the general causation question. Again, absent from the opinion. And two, remember in Daubert, it was a Benedictine. It caused birth defects. And the Supreme Court said qualified experts, but they didn't have one statistically significant study. And so my submission to this court is, how do you—does a district court create a higher standard than Daubert? The judge even puts in her order that the Fifth Circuit doesn't require statistical evidence. We have numerous studies. She also discounted all the leukemia studies. Well, the leukemia studies in general are studying AML and leukemia as a whole. Then the AML studies for benzene and gasoline, as well as AML and all the other studies, the plaintiffs had like 100 studies that showed statistical significance for benzene and gasoline, at least 20 studies that addressed leukemia in benzene and gasoline. I mean, the question is, how many do you need? I mean, Daubert and Joyner just said you need some evidence. And Joyner, they didn't have one that was statistically significant. And if they did, it was dealing with another product. It didn't specify the PCBs, the carcinogen within the mineral oil. So I submit that the district court made an error in ignoring all the statistical significant evidence. And just like in Curtis, all they relied on was the ATSDR, Toxicological Profile on Benzene, and the MSDS sheets. So when you look at what wasn't addressed or what wasn't considered, and the 5-7, I think that is a major issue. I think I'm out of time. Thank you, Your Honor. Both of you brought us an important case.